## SHULDENER et al. v. TRIO WATER ENGINEERING CORPORATION et al.

District Court, S. D. New York.

Feb. 20, 1936.

Dean, Fairbank, Hirsch & Foster, of New York City (Morris Hirsch, of New York City, of counsel), for plaintiffs.

Cooper, Kerr & Dunham, of New York City (Thomas J. Byrne and Henry J. Savage, both of New York City, of counsel), for defendants.

COXE, District Judge.

This is a suit for infringement of the Shuldener patent, No. 1,796,407, issued March 17, 1931, covering apparatus for the treatment of liquid. The application as originally filed contained both method and apparatus claims, but the method claims were withdrawn during the Patent Office proceedings, leaving only the apparatus claims in the patent when it issued.

The plaintiff Shuldener is the owner of the patent, and the plaintiff Water Service Laboratories, Inc., holds an exclusive license for limited territory. The defendant Trio Water Engineering Corporation is engaged in making and installing the alleged infringing apparatus; and the complaint charges that the individual defendants, Steinmuller, Taylor, and Lindsay, organized the Trio Corporation for the purpose of infringement, and are now in control of its affairs. The

defendant New York Dock Trade Facilities Corporation is a customer of the Trio Corporation, and is joined merely as a user.

The claims in issue are Nos. 1 to 11, inclusive, and the typical claim, No. 1, reads as follows: "1. In a liquid installation, the combination of a container partly charged with a treating fluid heavier than the liquid to be treated, means terminating adjacent the upper wall of the container admitting liquid from the source into the upper part of said container at one region thereof, and means terminating adjacent the upper wall of the container for delivering liquid from the upper part of said container at another region thereof whereby the liquid flow occurs without passing directly through undissolved treating fluid."

The defenses are invalidity and non-infringement.

The object of the patent is to provide a simple and dependable system, which can readily be built into, or applied to, the regular water system of an apartment house, hotel, or other structure, for the purpose of treating the water to prevent rust in the pipes. The treating material recommended is sodium silicate, which, when introduced into the water, has the effect not only of neutralizing the carbonic acid gas, but of coating the inner surface of the pipes with scale to keep rust from forming. The main problem was to inject this substance automatically into the water system in proper quantity, so as to secure uniformity of treatment.

The apparatus shown in the patent consists of a metal tank only partly filled, preferably about halfway, with sodium silicate; this tank is connected in a shunt passage to the regular water supply main; inlet and outlet pipes extend to the top of the tank; and between the pipes there is an invariant restriction orifice in the main to permit only a small proportion of the water to pass through the top of the tank. There is also disclosed a control valve in the outlet pipe to regulate the flow of water through the tank.

There were a number of unsuccessful attempts prior to Shuldener to solve the problem of pipe rust, and the record contains testimony regarding the history of the Drip Feed, Deactivator, and Deaerator systems, all of which, after prolonged periods of trial, were discarded as unsatisfactory. None of these prior systems resembled Shuldener's; but they are significant as showing the failure of contemporary workers in the same field to find a solution of the problem which Shuldener was able to solve.

The Shuldener apparatus has met with considerable commercial success during the short time it has been on the market, and there are now over 400 installations being regularly serviced by the Water Service Company. Moreover, the Permutit Company, one of the largest water treatment companies, has adopted the system as part of its standard equipment.

The principal prior art references cited by the defendants are the two British patents to Horsfield, No. 202,477 (1922) and Thompson, No. 19,378 (1905), both of which were considered by the Patent Office in connection with the Shuldener application. These two patents relate to the feeding of scale-preventing compositions into boilers and feed-water heaters; the problem with them was, therefore, entirely different from that of Shuldener, who deliberately set out to form scale on the pipes to keep them from rusting. Fundamentally, Horsfield and Thompson are to be distinguished from Shuldener in that both of them show piping arranged so as to pass the water completely through the treating liquid; whereas, in the Shuldener apparatus the water is merely washed over the surface of the chemical in the tank in order to obtain proper diffusion and uniform distribution.

The defendants have also cited as additional references the United States patents to Butler, No. 461,235 (1891), and Coffey, No. 441,284 (1890). These patents deal with filtering devices employing hard material, and are clearly distinguishable. Butler shows an intermittent system, in which the treating jar is normally kept out of operation, and when treatment is required the three-way valve is turned to cause a violent jet of water to pass through the jar and flush the contents to the filter. Coffey has two forms of displacement for driving the water through the concentrated chemical to make a saturated solution, and then forces this solution into the system. Neither patent shows anything capable of Shuldener's uniform distribution and diffusion of the treating material.

■ I think, therefore, that the Shuldener patent discloses invention, and is valid.

734

On the question of infringement, the only feature of the alleged infringing apparatus requiring consideration is the perforated inlet pipe. This perforated pipe extends into the body of the treating liquid, and terminates near the bottom of the tank; but the demonstrations made at the trial, and after the conclusion of the argument, show plainly that the portion below the level of the liquid is completely functionless. The claims of the patent require that the inlet and outlet pipes shall terminate "adjacent the upper wall of the container," meaning that the "business end" [Star Can Opener Co. v. Owen Dyneto Co. (C.C.A.) 16 F.(2d) 353] of these pipes shall be above the level of the treating liquid. The portion of the alleged infringing apparatus above the treating liquid is the only part which has any purpose in the equipment, and the remainder is unimportant and nonessential. I am satisfied, therefore, that the claims are infringed.

■ With respect to the individual defendants, I think the decree may properly run against the defendants Lindsay and Taylor. They were thoroughly familiar with the Shuldener patent before the infringement commenced. Lindsay was formerly employed by the Water Service Company, and left to develop the infringing apparatus; he was one of the organizers of the Trio Corporation, and he continued actively in the management of that company until the early part of 1933. Taylor was associated with the Trio Corporation since its incorporation, and is now its president and dominating spirit. I am satisfied, therefore, that the only purpose of the company was to make and install the infringing equipment; and under the facts presented, I think the defendants Lindsay and Taylor may be held individually liable for the consequences of the infringement. Claude Neon Lights v. American Neon Light Corp. (C.C.A.) 39 F.(2d) 548; Ruggles-Coles Engineering Co. v. McGann Engineering Co. (D.C.) 34 F.(2d) 519.

There may be a decree in favor of the plaintiffs, and against the defendants, Trio Water Engineering Corporation, William Lindsay, James J. Taylor, and New York Trade Dock Facilities Corporation, holding claims 1 to 11, inclusive, of the patent in suit, valid and infringed, and directing an accounting, together with costs.